**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY**

CASE NO. 1:25-cv-20982

AZI 116, LLC,

      Plaintiff,

vs.

AZ 116' INFINITY, LLC,
RAFAEL LAZARO NAVARRO
a/k/a RALPH NAVARRO,
FERNANDO G. SALINAS,
INFINITY YACHT ACQUISITION
COMPANY, LLC,
MYI INTERNATIONAL, LLC d/b/a
FLORIDA YACHTS INTERNATIONAL,

      Defendants.

_____/

## VERIFIED AMENDED COMPLAINT

Plaintiff, AZI 116, LLC, by and through undersigned counsel, hereby files this Verified Amended Complaint and Demand for Jury Trial against Defendants, AZ 116' INFINITY, LLC, RAFAEL LAZARO NAVARRO a/k/a RALPH NAVARRO, FERNANDO G. SALINAS, INFINITY YACHT ACQUISITION COMPANY, LLC, and MYI INTERNATIONAL, LLC d/b/a FLORIDA YACHTS INTERNATIONAL and states as follows:

## PARTIES

1.     Plaintiff, AZI 116, LLC ("AZI"), is a Delaware Limited Liability Company authorized to conduct business in Florida, with its principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134.

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

2.      Defendant, AZ 116' INFINITY, LLC ("AZ Infinity"), is a Delaware Limited Liability Company authorized to conduct business in Florida, with its principal place of business located at 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803.

3.      Defendant, INFINITY YACHT ACQUISITION COMPANY, LLC ("Infinity Yacht") is a Florida Limited Liability Company and is operating in Florida with a principal place of business at 6775 SW 101 Street, Pinecrest, Florida 33156. Upon information and belief, Orlando Benitez ("Benitez") is the sole legal owner and manager of INFINITY YACHT,

4.      Defendant, FERNANDO G. SALINAS ("Salinas"), is an individual domiciled in Miami-Dade County and a citizen of the State of Florida and is otherwise *sui juris*.

5.      Upon information and belief, SALINAS is the sole legal owner and manager of AZ INFINITY.  In /around January 2025, SALINIAS was lied to by NAVARRO regarding NAVARRO having authority to sell the underlying vessel and permission from AZI to sell the vessel to Defendant Infinity Yacht.

6.      Defendant, MYI INTERNATIONAL, LLC d/b/a FLORIDA YACHTS INTERNATIONAL ("Florida Yachts") is a Florida Limited Liability Company and is operating in Florida with a principal place of business at 2550 S. Bayshore Drive, Suite 102, Coconut Grove, Florida 33133. Upon information and belief, at all relevant times, FLORIDA YACHTS was in the business of sales of vessels and related items.

7.      Defendant, RAFAEL LAZARO NAVARRO a/k/a RALPH NAVARRO ("Navarro"), is an individual domiciled in Miami-Dade County, is a citizen of the State of Florida, and is otherwise *sui juris*. At all times relevant, NAVARRO was in the business of sales of vessels and related items. Specifically, NAVARRO is licensed as a "Yacht and Ship Salesperson or

2



Broker," holding License No. 2275, by the Florida Department of Business and Professional Regulation and actively conducting business in this District.

8. Upon information and belief, NAVARRO is the sole legal owner and manager of FLORIDA YACHTS.

## JURISDICTION AND VENUE

9. This is a civil action for damages in excess of $75,000, exclusive of attorneys' fees and costs, and is therefore within this Court's subject matter jurisdiction.

10. This Court has subject-matter jurisdiction over this action because this is an Admiralty and Maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, 28 USC §1333, 46 U.S.C. §31325, and Rule C of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, based on enforcement and foreclosure of a preferred ship mortgage and claims for the outstanding indebtedness security by a mortgaged vessel, and the causes of action under state law alleged herein arise from a common nucleus of operative fact.

11. Venue is properly placed in this district pursuant to 28 U.S.C. §1391(b)(1), because the Defendants reside in this District; and pursuant to §1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and the property to be replevied and/or enjoined is located within Miami-Dade County, Florida.

12. All conditions precedent to the maintenance of this action have been satisfied, performed, or waived.

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

## FACTUAL BACKGROUND

### I.   *AZI's Security Interest in the Vessel by Virtue of its Promissory Note and Mortgage.*

13.   On or about October 7, 2024, AZI and AZ INFINITY, through SALINAS, entered into a Purchase and Sale Agreement in which AZ INFINITY agreed to purchase from AZI the "Infinity," a 2004 116' Azimut motor yacht bearing Hull Number 14 and U.S. Official Identification No. 1296774 (the "Vessel"). A true and correct copy of the fully executed Purchase and Sale Agreement is attached as **Exhibit 1.**

14.   The sale of the Vessel between AZI and AZ INFINITY was brokered by FLORIDA YACHTS, which was identified as the Selling Broker and Listing Broker for the transaction on the Purchase and Sale Agreement.

15.   Pursuant to the Purchase and Sale Agreement, the purchase price of the Vessel was $2,350,000.00. AZ INFINITY made a down payment of $1,150,000.00 and financed the remaining $1,200,000.00, to be paid in installments of $90,000.00 every 90 days at an interest rate of 7.5% per year.

16.   On or about November 5, 2024, AZI and AZ INFINITY entered into a Promissory Note pursuant to which AZ INFINITY became indebted to AZI in the principal amount of $1,200,000.00, plus interest at a rate of 7.5% per year. SALINAS executed the Promissory Note on behalf of AZ INFINITY. A true and correct copy of the fully executed Promissory Note is attached as **Exhibit 2.**

17.   Pursuant to the Promissory Note, AZ INFINITY was to remit to AZI lump sum payments of $90,000.00 every 90 days until November 1, 2027.

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

18.     AZ INFINITY'S obligations under the Promissory Note were secured by the Vessel. AZI was to retain all original documentation to the Vessel until the Note was fully satisfied by AZ INFINITY.

19.     Pursuant to the Promissory Note, "[t]his Note may not be changed, modified or terminated orally, but only by agreement in writing signed by the Borrower and Lender." Exhibit 2 at p. 2.

20.     To secure payment under the Promissory Note, SALINAS, on behalf of AZ INFINITY, executed and delivered to AZI a First Preferred Mortgage (hereinafter "Mortgage") whereby AZ INFINITY granted a security interest in the Vessel to AZI, until such time as the Promissory Note for the Vessel was satisfied in full. A true and correct copy of the fully executed Mortgage is attached hereto as **Exhibit 3**.

21.     Under the Mortgage, AZ INFINITY agreed to "do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel." *Id*. at Article 1, ¶ 4.

22.     Under the Mortgage, AZ INFINITY agreed as follows:

> Owner shall not, without the prior written consent of the Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

*Id*. at Article 1, ¶ 10.

> Owner shall keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risk if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by the Mortgagee.

*Id*. at Article 1, ¶ 3.

5



23.     Pursuant to the Mortgage, an "Event of Default" constitutes:

Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8, and 10 of Article 1 hereof, or attempt to violate Sections 4 or 10 of Article 1 hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein[.]

*Id.* at Article 2, ¶ 1.

24.     At the occurrence of an "Event of Default" under the Mortgage, AZI may:

Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at a default rate of 18%.

Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder, and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monied then owing; and/or

Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel premise, and/or Mortgagee may become the purchaser.

*Id.* at Article 2, ¶¶ 1(a)-(c).

25.     Pursuant to the Mortgage:

The net proceeds of . . . any claim for damages . . . shall be applied as follows:

FIRST; To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred, or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the no\te secured hereby, with interest on all such amounts at the default rate of 18%; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

SECOND:  To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all un-matured installments or principal in the inverse order of their maturity.

. . .

All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defenses of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand at the default rate of 18%, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make nay such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

*Id*. at Article 2, ¶¶ 4, 5.

26.     On November 13, 2024, AZI recorded its security interest in the Vessel with the United States Coast Guard's National Vessel Documentation Center. A true and correct copy of the General Index or Abstract of Title from the U.S. Coast Guard is attached hereto as **Exhibit 4.**

27.     At all material times, the Vessel was documented under the laws of the United States. All other requirements of the Ship Mortgage Act of 190, as amended, were met or caused to be met, either by AZI or the United States Coast Guard's National Vessel Documentation Center. The mortgage debt is a valid preferred ship's mortgage lien, and AZI is entitled to the priority accorded it as a matter of law.

## II.   *The Resale of the Vessel Without AZI's Knowledge or Consent in Violation of the Promissory Note and Mortgage.*

28.     On January 21, 2025, AZI sent correspondence to SALINAS and AZ INFINITY requesting proof of insurance as required under the Mortgage and providing payment instructions for the installment payment in the amount of $90,000.00 due on February 5, 2025.

29.     In response to AZI's correspondence, SALINAS and AZ INFINITY informed AZI that the Vessel had been resold.

7



30.     The resale of the Vessel from SALINAS and AZ INFINITY was consummated without AZI'S knowledge or consent in violation of the Promissory Note and Mortgage.

31.     FLORIDA YACHTS, through NAVARRO, represented both the buyer and the seller (AZ INFINITY) in the resale of the Vessel.

32.     None of the Defendants notified AZI of the resale of the Vessel.

33.     None of the Defendants requested permission from AZI to resell the Vessel.

34.     At no time prior to January 26, 2025, did any of the Defendants request a payoff amount or estoppel letter from AZI.

35.     All of the Defendants are experienced and sophisticated in the world of purchasing and selling yachts.

36.     SALINAS and AZ INFINITY did not provide AZI with the requested proof of insurance as required under the Mortgage.

37.     NAVARRO and FLORIDA YACHTS prepared a Purchase and Sale Agreement with respect to the resale of the Vessel.  A copy of the Purchase and Sale Agreement regarding the resale of the Vessel, which was filed with the Court on March 24, 2025 as ECF No. 20-12, is attached as **Exhibit 5** (the "Resale Purchase and Sale Agreement").

38.     According to the Resale Purchase and Sale Agreement, the "Buyer" is listed as "Primetime Yacht Charters, LLC &/or Assigns" ("Primetime"). Exhibit 5 at 1. However, a Bill of Sale dated January 17, 2025, which was purportedly recorded with the United States Coast Guard on February 20, 2025, reflects INFINITY YACHT as the "Buyer." Exhibit 5 at 2.

39.     At the time that FLORIDA YACHTS, through NAVARRO, brokered the resale of the Vessel between AZ INFINITY and INFINITY YACHT, NAVARRO and FLORIDA YACHTS knew that AZI had a valid recorded Mortgage on the Vessel.

8



40.     Indeed, FLORIDA YACHTS, through NAVARRO, did or should have performed a title search on the Vessel and obtained a report or abstract reflecting AZI's security interest.

41.     To consummate the sale of the Vessel from AZ INFINITY to INFINITY YACHT, on January 17, 2025, NAVARRO both executed and notarized a false and fraudulent document entitled Satisfaction or Release of Mortgage, Claim of Lien or Preferred Mortgage (hereinafter "Satisfaction of Mortgage") purporting to discharge AZ INFINITY'S indebtedness to AZI without AZI's knowledge or consent. A copy of the Satisfaction of Mortgage is attached as **Exhibit 6.**

42.     The Satisfaction of Mortgage states that "Mortgagee or Claimant requests that the indebtedness referenced above be discharged from the record of subject vessel." Exhibit 6.

43.     The Satisfaction of Mortgage states that it was "Recorded in Book No./Batch No. 138515100, Page No./ Document ID 4." Exhibit 6.

44.     None of the Defendants notified AZI of the Satisfaction of Mortgage or that NAVARRO would be executing or recording the Satisfaction of Mortgage.

45.     None of the Defendants requested AZI's permission to execute or record the Satisfaction of Mortgage.

46.     Prior to the resale of the Vessel between AZ INFINITY and INFINITY YACHT, none of the Defendants requested a payoff amount or estoppel letter from AZI in order to satisfy the existing Promissory Note and Mortgage on the Vessel.

47.     NAVARRO both executed and notarized the false and fraudulent Satisfaction of Mortgage in violation of Fla. Stat. § 117.107(12), which states that "it is unlawful for a notary public to notarize his or her own signature."

48.     NAVARRO both executed and notarized the false and fraudulent Satisfaction of Mortgage in violation of Fla. Stat. § 117.107(12), which states that "[a] notary public may not

9



notarize a signature on a document if the notary public has a financial interest in or is a party to the underlying transaction."

49. At the conclusion of an evidentiary hearing on AZI's Motion for a Preliminary Injunction, the Court held that "the evidence is pretty clear that the actual satisfaction document was improper by Mr. Navarro. I don't believe he was authorized to issue that by the Plaintiffs [AZI], and also, under Florida law, . . . I'm pretty sure, based on the statute, that he could not notarize that document for himself or on behalf of his company." *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5, lines 18-24.

50. At all material times, including at the time NAVARRO executed the false and fraudulent Satisfaction of Mortgage, NAVARRO knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling or mortgaging the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) he did not have authorization from AZI to sell the Vessel; and (6) he did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

51. Given NAVARRO'S position as sole owner and manager of FLORIDA YACHTS and given that FLORIDA YACHTS brokered the initial sale of the Vessel from AZI to AZ INFINITY, FLORIDA YACHTS knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling or mortgaging the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) NAVARRO did not have authorization from AZI to sell the Vessel; and (6)

10

NAVARRO did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

52.     At all material times, including at the time AZ INFINITY sold the Vessel to INFINITY YACHT and NAVARRO executed the false and fraudulent Satisfaction of Mortgage, AZ INFINITY and SALINAS knew that: (1) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (2) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling or mortgaging the Vessel without prior written consent from AZI; (3) the Promissory Note and Mortgage had not been satisfied; (4) NAVARRO did not have authorization from AZI to sell the Vessel; and (5) NAVARRO did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

53.     All of the Defendants knew or should have known that the purported Satisfaction of Mortgage was unauthorized or otherwise invalid as the face of the document reveals:

    a.   NAVARRO identifies himself as "agent, yet no other document or information exists, nor could exist in January 2025, to support such an assertion; and,

    b.    that NAVARRO notarized his own signature, in violation of Florida law.

54.     All of the Defendants knew or should have known that NAVARRO was not authorized in any capacity under the Florida Division of Corporations. A copy of AZI's corporate registration with the Florida Division of Corporations from Sunbiz.com attached as **Exhibit 7**.

55.     All Defendants are sophisticated parties with substantial experience in the purchase, sale, and ownership of high-value vessels, including the use of holding companies or similar entities to hold legal title to such assets. They have engaged in numerous transactions involving vessels of significant value and are well-versed in the standard practices and



documentation necessary to verify the authority of purported agents involved in the closing of a sale of a vessel.

56.     Given their industry knowledge and familiarity with such transactions, the Defendants knew or should have known to request and review appropriate documentation establishing the actual satisfaction of any existing security interest on the Vessel. The Defendants' failure to perform such fundamental checks constitutes a deviation from standard commercial practices and contributed directly to the consummation of the unauthorized and invalid transaction.

57.     In a provision entitled "Seller's Representations; Requirements for Closing" within the Resale Purchase and Sale Agreement, SALINAS and AZ INFINITY declared the following:

> Seller represents and warrants that: (a) the Vessel is being conveyed free and clear of all debts, claims, maritime or common law liens, security interest, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due of any state, county, regulatory, and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"); and (b) Seller has good and marketable title to the Vessel, which Seller will warrant and defend.
>
> By the Closing Date, Seller shall deliver to Buyer: (i) satisfactory evidence of title, (ii) proof of payment/removal of all Encumbrances, if any; (iii) a personal guaranty and indemnification from the Seller (or the beneficial owner(s) of the Seller if Seller is a corporate entity) guaranteeing Seller's representations and warranties in (a) and (b) above; and (iv) any other necessary documents for transfer of good and marketable title to the Buyer.

Exhibit 5 at 2. This declaration was false because of AZI's Mortgage upon the Vessel and the debt owed under the Promissory Note.

58.     Even though NAVARRO, FLORIDA YACHTS, SALINAS, and AZ INFINITY knew of the existence of AZI's Mortgage and the debt due under the Promissory Note, these encumbrances were not mentioned or included in the Resale Purchase and Sale Agreement.

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

59.     Even though all of the Defendants knew of the existence of AZI's Mortgage and the debt due under the Promissory Note, these encumbrances were not mentioned or included as part of the closing of the resale of the Vessel from AZ INFINITY to INFINITY YACHTS.

60.     Indeed, the Defendants did not even discuss the satisfaction of AZI's Promissory Note and Mortgage as part of the closing.

61.     Upon information and belief, the closing on the resale of the Vessel from AZ INFINITY to INFINITY YACHTS took place on January 16, 2025.

62.     The Vessel was sold by AZ INFINITY to INFINITY YACHTS for $1,700,000.

63.     NAVARRO and FLORIDA YACHTS collected the purchase price paid by INFINITY YACHT for the Vessel.

64.     FLORIDA YACHTS, through NAVARRO, collected a ten percent deposit in the amount of $170,000 for the resale of the Vessel. Exhibit 5.

65.     At The time of closing, FLORIDA YACHTS, through NAVARRO, collected $1,530,000.00 as a result of the resale of the Vessel. Exhibit 5.

66.     After the closing on the resale of the Vessel, FLORIDA YACHTS remitted $500,000 to SALINAS.

67.     The sum of $1,200,000 from the resale of the Vessel remained deposited in FLORIDA YACHTS' bank account after the closing on the resale of the Vessel.

68.     AZI's Promissory Note and Mortgage were not satisfied upon the closing of the resale of the Vessel from AZ INFINITY to INFINITY YACHTS.

69.     AZI's Promissory Note and Mortgage were not satisfied upon the execution or recording of the Satisfaction of Mortgage.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421

**III.** **Infinity Yachts Participated in the Unauthorized Resale of the Vessel with Full Knowledge of AZI's Secured Interest.**

70.     In or about September or August of 2024, prior to the Vessel being sold by AZI to AZ INFINITY, Benitez, the beneficial owner of INFINITY YACHT, attempted to purchase the Vessel directly from AZI. However, AZI rejected Benitez's purchase offer because it was well below market value.

71.     In or about December 2024, Benitez's son again reached out to AZI claiming that the Vessel was "back on the market" and asking AZI to assign the Promissory Note and Mortgage on the Vessel to Benitez. However, AZI again rejected Benitez's purchase offer because AZI was aware of Benitez's intention to charter the Vessel for public use. AZI expressly told Benitez's son that AZI was unwilling to accept a promissory note or mortgage using the Vessel as security under circumstances where the Vessel would be subject to public charter and potential damage.

72.     Benitez subsequently circumvented AZI's express rejection of his purchase offers by creating INFINITY YACHT to purchase the Vessel from AZ INFINITY, by communicating through NAVARRO and FLORIDA YACHTS, without AZI's knowledge or consent.

73.     In fact, NAVARRO, FLORIDA YACHTS, and INFINITY YACHTS agreed that the ten percent commission owed to FLORIDA YACHTS from the resale of the Vessel would be paid from the revenue generated by the Vessel through public chartering because INFINITY YACHT was getting a good deal on the purchase price.

74.     At all material times, including at the time INFINITY YACHT purchased the Vessel from AZ INFINITY, INFINITY YACHT knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling or mortgaging

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

the Vessel without prior written consent from AZI; and (4) NAVARRO did not have authorization from AZI to sell the Vessel; and (5) NAVARRO did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

75.     INFINITY YACHT knew or should have known that the manner in which it was obtaining possession through NAVARRO and FLORIDA YACHTS was without AZI's authorization and otherwise improper as:

a.  Benitez knew and was communicating directly with AZI as recently as a few weeks before interacting with NAVARRO.

b.  AZI had expressly and directly rejected two prior offers to sell the Vessel to INFINITY YACHT (first in August 2024 and then again in January 2025); and,

c.  AZI had expressly communicated that it would not extend a Note /Mortgage to INFINITY YACHT for the Vessel because INFINITY YACHT intended to use the Vessel for commercial chartering services.

d.  NAVARRO is not identified in any document presented to INFINITY YACHT or with Florida Division of Corporations as an officer, manager, or otherwise authorized agent on behalf of AZI.  See copy of Sunbiz.com corporate information attached as **Exhibit 7**.

### IV.     *Navarro and Florida Yachts' Late and Insufficient Payment to a Separate Entity.*

76.     Around January 26, 2025, AZI, through counsel, demanded payment from NAVARRO and FLORIDA YACHTS with respect to the improper resale of the Vessel. AZI's counsel simultaneously demanded payment from NAVARRO and FLORIDA YACHTS for a debt due to a different entity, Cigarette Holdings, LLC ("Cigarette"), that likewise alleges that NAVARRO and FLORIDA YACHTS committed acts of theft and fraud against it, in amounts

15

**BlackSrebnick**
CIVIL | CRIMINAL

totaling more than $3,000,000.00. These demands were presented through informal text communications discussing the total debt amount owed to both AZI and Cigarette by NAVARRO and FLORIDA YACHTS. However, NAVARRO never requested a payoff amount or estoppel letter from AZI.

77.     Without requesting or obtaining a final payoff amount or estoppel letter from AZI, it was not until January 28, 2025, that FLORIDA YACHTS, through NAVARRO, remitted one wire transfer in the amount of $150,000 to a bank account held by an independent third party business (*i.e.* Cigarette, not AZI) with a memo stating, "Partial seller's proceeds, Infinity."

78.     Then on February 3, 2025, still without requesting or obtaining a final payoff amount or estoppel letter from AZI, FLORIDA YACHTS, through NAVARRO, remitted another wire transfer in the amount of $1,072,191.75 to a bank account held by Cigarette (not AZI) with a memo stating, "Final Payoff 116' M/Y Infinity."

79.     FLORIDA YACHTS and/or NAVARRO did not issue any payments directly to AZI.

80.     If the payments made to Cigarette were applied towards the satisfaction of AZI's Promissory Note and Mortgage, they would be applied according to the default terms and order of priority set forth in the Promissory Note and Mortgage.

81.     Even applying the two payments remitted to Cigarette's bank account toward the pending balance on AZI's Promissory Note and Mortgage, at no time as of the filing of this Amended Complaint, has the Note and Mortgage been fully satisfied. *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5, lines 2-6 (Court: "[E]ven if I assume that the amount paid on the wire transfer was for satisfaction of the mortgage, the full amount wasn't paid, so I do find that the plaintiff has shown a substantial likelihood of success on the merits as to AZ Infinity in [the count for foreclosure under the mortgage].").



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

82.     After receiving the February 3, 2025 wire transfer, AZI informed NAVARRO and FLORIDA YACHTS that  AZI's Promissory Note and Mortgage remained unsatisfied, and AZI continued to endeavor to obtain full payment in satisfaction of the Promissory Note and Mortgage.

83.     Weeks passed without further payment or any request by any of the Defendants for a final payoff amount or estoppel letter, thereby requiring AZI to initiate formal legal action to enforce all rights under the Promissory Note and Mortgage.

84.     As of the date of filing of this Amended Complaint, $178,440.59 remains due and owing by AZ INFINITY to AZI under the Promissory Note and Mortgage, plus daily accruing interest and attorneys' fees.

85.     AZI has learned that the Vessel is being chartered for private events in violation of the Mortgage.

86.     Upon information and belief, the current value of the Vessel is 2,500,000.00.

87.     As a result of the above tortious conduct by all Defendants, AZI retained the undersigned counsel to represent it in this cause of action and is obligated to pay reasonable attorneys' fees and costs.

<u>**COUNT I**</u>
**FORECLOSURE UNDER THE MORTGAGE**
**(AGAINST AZ INFINITY)**

88.     AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

89.     This is an action against AZ INFINITY for foreclosure under the Promissory Note and Mortgage.

90.     AZI is the owner and holder of the Promissory Note and Mortgage secured by the Vessel, both of which are attached as Exhibit 2 and Exhibit 3.

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

91.     AZ INFINITY has defaulted under the Promissory Note and Mortgage by: (1) failing to "do everything necessary to establish and maintain [the Mortgage] as a First Preferred Mortgage" on the Vessel; (2) failing to keep the Vessel fully and adequately insured as required by the Mortgage; (3) selling the Vessel without AZI's prior written consent; (4) securing a false and fraudulent Satisfaction of Mortgage in order to effectuate the sale of the Vessel in violation of the Promissory Note and Mortgage.

92.     Pursuant to the Promissory Note and Mortgage, AZI has a valid, perfected security interest in the Vessel.

93.     To date, AZI has not received the full amount due and owing under the Promissory Note and Mortgage. *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5, lines 2-6 (Court: "[E]ven if I assume that the amount paid on the wire transfer was for satisfaction of the mortgage, the full amount wasn't paid, so I do find that the plaintiff has shown a substantial likelihood of success on the merits as to AZ Infinity in [the count for foreclosure under the mortgage].").

94.     As a result of AZ INFINITY'S default, AZI is entitled to take immediate possession of the Vessel and pursue any and all rights and remedies to which it is entitled as a secured creditor under the terms of the Promissory Note and Mortgage, including foreclosure of its security interest in the Vessel and the sale of the Vessel to satisfy the sums due and owing to AZI.

95.     AZI is also entitled to a declaration from the Court that the security interest granted to AZI pursuant to the Promissory Note and Mortgage is a valid lien on the Vessel and that the amount found to be due to AZI, together with attorneys' fees, costs and other related expenses, be decreed to be a good and subsisting lien against the Vessel; and that the Vessel, or so much thereof

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

as may be required to satisfy the amounts found to be due, shall be sold to satisfy the obligation owed to AZI.

96.     AZI has incurred expenses in connecting with the bringing of this action, and AZI is obligated to pay its attorneys a reasonable fee for their services. Pursuant to the terms of the Mortgage, AZ INFINITY is responsible for such fees and expenses.

WHEREFORE, AZI respectfully requests that this Court enter judgment in its favor and against AZ INFINITY as follows:

    a.  That the court foreclose AZI's security interest in the Vessel;

    b.  That the Court adjudicate the amount due to AZI as principal, maturities/curtailments, interest, expenses, court costs, attorneys' fees and costs, and other expenses permitted under the Promissory Note and Mortgage;

    c.  That the Court order AZI's entitlement to take immediate possession of the Vessel, together with an award of any deficiency damages, expenses of replevin and sale, attorneys' fees and costs against Defendant AZ INFINITY;

    d.  That the Court order the Vessel be sold and the proceeds of the sale be applied towards the satisfaction and payment of the expenses of the sale and satisfy the sums due and owing to AZI, including attorneys' fees, costs and interest; and

    e.  Such further relief as the Court deems just and proper.

**COUNT II**
**BREACH OF CONTRACT**
**(AGAINST AZ INFINITY)**

97.     AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

19

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

98.    This is an action against AZ INFINITY for breach of the Promissory Note and Mortgage.

99.    AZI is the owner and holder of the Promissory Note and Mortgage secured by the Vessel, both of which are attached as Exhibit 2 and Exhibit 3.

100.    AZ INFINITY has breached the Promissory Note and Mortgage by: (1) failing to "do everything necessary to establish and maintain [the Mortgage] as a First Preferred Mortgage" on the Vessel; (2) failing to keep the Vessel fully and adequately insured as required by the Mortgage; (3) selling the Vessel without AZI's prior written consent; (4) securing a false and fraudulent Satisfaction of Mortgage in order to effectuate the sale of the Vessel in violation of the Promissory Note and Mortgage.

101.    As a result of AZ INFINITY'S breach, to date, AZI has not received the full amount due and owing under the Promissory Note and Mortgage. *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5, lines 2-6 (Court: "[E]ven if I assume that the amount paid on the wire transfer was for satisfaction of the mortgage, the full amount wasn't paid, so I do find that the plaintiff has shown a substantial likelihood of success on the merits as to AZ Infinity in [the count for foreclosure under the mortgage].").

102.    AZI has incurred expenses in connecting with the bringing of this action, and AZI is obligated to pay its attorneys a reasonable fee for their services. Pursuant to the terms of the Mortgage, AZ INFINITY is responsible for such fees and expenses.

WHEREFORE, AZI demands entry of judgment against AZ INFINITY for damages in an amount to be determined at trial, including attorneys' fees and costs, interest, and such other and further relief as the Court deems just and proper.

**BlackSrebnick**
CIVIL | CRIMINAL

## COUNT III
## QUIET TITLE
## (AGAINST INFINITY YACHT)

103.    AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

104.    AZI holds a valid, recorded First Preferred Ship Mortgage on the Vessel, securing the Promissory Note. Said Mortgage was properly recorded with the United States Coast Guard's National Vessel Documentation Center.

105.    The Mortgage has not been satisfied or released by AZI, and the obligations under the Promissory Note remain outstanding.

106.    Despite this, INFINITY YACHT claims an adverse interest in the Vessel, having purportedly acquired it from AZ INFINITY through a sale that was unauthorized, invalid, and in violation of the express terms of the Mortgage and Promissory Note.

107.    The purported Satisfaction of Mortgage, which was used to consummate the resale of the Vessel to INFINITY YACHT, was false and fraudulently executed and recorded by NAVARRO, who lacked legal authority to execute or record such a document on behalf of AZI. This was done without AZI's knowledge or consent.

108.    INFINITY YACHT knew of AZI's Mortgage and the restrictions therein prohibiting resale without AZI's written consent.

109.    INFINITY YACHT is not a bona fide purchaser for value without notice.

110.    AZI seeks to quiet title to the Vessel in its favor, subject to and inclusive of the rights and interests secured by the Mortgage, and to remove any cloud on title created by the purported resale of the Vessel and the fraudulent Satisfaction of Mortgage.

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

111.     Unless this Court quiets title in favor of AZI and declares the Mortgage valid and enforceable against the Vessel notwithstanding the fraudulent Satisfaction of Mortgage, AZI will suffer continued irreparable harm, including loss of its security interest in the Vessel.

WHEREFORE, AZI respectfully requests that this Court enter judgment in its favor and against INFINITY YACHT as follows:

    a.   Declaring that AZI's Mortgage is valid and enforceable;

    b.   Declaring that the purported Satisfaction of Mortgage is void and of no legal effect;

    c.   Declaring that INFINITY YACHT has no valid title or interest in the Vessel superior to AZI's Mortgage interest;

    d.   Quieting title to the Vessel in favor of AZI, subject to its recorded Mortgage;

    e.   Awarding costs of this action and such other relief as the Court deems just and proper.

**COUNT IV**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(AGAINST FLORIDA YACHTS AND NAVARRO)**

112.     AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

113.     This is an action for violation of Florida's Deceptive and Unfair Trade Practices Act against FLORIDA YACHTS and NAVARRO.

114.     At all relevant times, FLORIDA YACHTS was in the business of sales of vessels and related items.

115.     At all times relevant, NAVARRO, who is the sole legal owner and manager of FLORIDA YACHTS, was in the business of sales of vessels and related items. Specifically,

22

**BlackSrebnick**
CIVIL | CRIMINAL

NAVARRO is licensed as a "Yacht and Ship Salesperson or Broker," holding License No. 2275, by the Florida Department of Business and Professional Regulation.

116.    FLORIDA YACHTS, through NAVARRO, brokered the resale of the Vessel between AZ INFINITY and INFINITY YACHT in violation of the Promissory Note and Mortgage held by AZI.

117.    To consummate the resale of the Vessel from AZ INFINITY to INFINITY YACHT, NAVARRO personally executed and notarized a false and fraudulent Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI without AZI's knowledge or consent. Exhibit 6 (Satisfaction of Mortgage); *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5, lines 18-19 (Court: "[T]he evidence is pretty clear that the actual satisfaction document was improper by Mr. Navarro. I don't believe he was authorized to issue that by the Plaintiffs, and also, under Florida law, . . . I'm pretty sure, based on the statute, that he could not notarize that document for himself or on behalf of his company.").

118.    NAVARRO executed and notarized the false and fraudulent Satisfaction of Mortgage knowing that AZI's Promissory Note and Mortgage had not been satisfied.

119.    At all material times, including at the time NAVARRO brokered the resale of the Vessel, facilitated the closing on the resale of the Vessel, and personally executed the false and fraudulent Satisfaction of Mortgage, NAVARRO knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) he did not have authorization from AZI to sell the Vessel; and (6) he did not have

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

120. Given NAVARRO'S position as sole owner and manager of FLORIDA YACHTS and given that FLORIDA YACHTS brokered the initial sale of the Vessel from AZI to AZ INFINITY, FLORIDA YACHTS knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) NAVARRO did not have authorization from AZI to sell the vessel; and (6) NAVARRO did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

121. NAVARRO and FLORIDA YACHTS collected payments totaling $1,700,000 in exchange for the resale of the Vessel between AZ INFINITY and INFINITY YACHT.

122. NAVARRO and FLORIDA YACHTS acted in furtherance of their unfair and deceptive practices by preparing documents and communications containing false information and misrepresentations, including a false and fraudulent Satisfaction of Mortgage, in order to finalize the unauthorized resale of the Vessel.

123. To date, AZI has not received the full payment due and owing pursuant to the Promissory Note or Mortgage.

124. NAVARRO and FLORIDA YACHTS' practices, as described above, are unfair and deceptive.

125. As a result of the unfair and deceptive practices of NAVARRO and FLORIDA YACHTS, AZI has been damaged.

24

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421

WHEREFORE, AZI demands entry of judgment against NAVARRO and FLORIDA YACHTS for damages in an amount to be determined at trial, including attorneys' fees and costs, interest, and such other and further relief as the Court deems just and proper.

**COUNT V**
**TORTIOUS INTERFERENCE**
**(AGAINST FLORIDA YACHTS AND NAVARRO)**

126.    AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

127.    This is an action for tortious interference against FLORIDA YACHTS and NAVARRO.

128.    FLORIDA YACHTS, through NAVARRO, brokered the resale of the Vessel between AZ INFINITY and INFINITY YACHT in violation of the Promissory Note and Mortgage held by AZI.

129.    To consummate the resale of the Vessel from AZ INFINITY to INFINITY YACHT, NAVARRO personally executed and notarized a false and fraudulent Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI without AZI's knowledge or consent. Exhibit 6 (Satisfaction of Mortgage); *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5, lines 18-19 (Court: "[T]he evidence is pretty clear that the actual satisfaction document was improper by Mr. Navarro. I don't believe he was authorized to issue that by the Plaintiffs, and also, under Florida law, . . . I'm pretty sure, based on the statute, that he could not notarize that document for himself or on behalf of his company.").

130.    NAVARRO executed and notarized the false and fraudulent Satisfaction of Mortgage knowing that AZI's Promissory Note and Mortgage had not been satisfied.

**BlackSrebnick**
CIVIL | CRIMINAL

131.    At all material times, including at the time NAVARRO brokered the resale of the Vessel, facilitated the closing on the resale of the Vessel, and personally executed the false and fraudulent Satisfaction of Mortgage, NAVARRO knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) he did not have authorization from AZI to sell the Vessel; and (6) he did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

132.    Given NAVARRO'S position as sole owner and manager of FLORIDA YACHTS and given that FLORIDA YACHTS brokered the initial sale of the Vessel from AZI to AZ INFINITY, FLORIDA YACHTS knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) NAVARRO did not have authorization from AZI to sell the vessel; and (6) NAVARRO did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

133.    NAVARRO and FLORIDA YACHTS collected payments totaling $1,700,000 in exchange for the resale of the Vessel between AZ INFINITY and INFINITY YACHT.

134.    To date, AZI has not received the full payment due and owing pursuant to the Promissory Note or Mortgage.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421

135.     NAVARRO and FLORIDA YACHTS interfered with AZI's contractual rights by, among other things, inducing a breach of the Promissory Note and Mortgage, improperly brokering the resale of the Vessel, purporting to dispose AZI's security interest in the Vessel without AZI's knowledge or consent, and obtaining funds from the resale of the Vessel to which they were not entitled.

136.     AZI has been damaged by NAVARRO and FLORIDA YACHTS' actions described above.

WHEREFORE, AZI demands entry of judgment against NAVARRO and FLORIDA YACHTS for damages in an amount to be determined at trial, including attorneys' fees and costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT VI
### CONVERSION
### (AGAINST NAVARRO AND FLORIDA YACHTS)

137.     AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

138.     Pursuant to the Promissory Note and Mortgage, AZ INFINITY became indebted to AZI in the principal amount of $1,200,000.00, plus interest at a rate of 7.5% per year and AZ INFINITY was to remit to AZI lump sum payments of $90,000.00 every 90 days until November 1, 2027.

139.     NAVARRO and FLORIDA YACHTS misappropriated the funds due and owing to AZI by brokering the sale of the Vessel from AZ INFINITY to INFINITY YACHT in violation of the Promissory Note and Mortgage, and by executing and notarizing a false and fraudulent Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI, without AZI's knowledge or consent.

27



140.    Upon information and belief, NAVARRO and FLORIDA YACHTS collected a payment in exchange for the sale of the Vessel between AZ INFINITY and INFINITY YACHT. The amount of the payment is currently unknown.

141.    NAVARRO and FLORIDA YACHTS were not authorized to misappropriate AZI's funds. In doing so, NAVARRO and FLORIDA YACHTS wrongfully exercised dominion and control over AZI's funds.

142.    To date, AZI has not received full payment pursuant to the Promissory Note or Mortgage.

143.    AZI has been damaged by the actions of NAVARRO and FLORIDA YACHTS.

WHEREFORE, AZI demands entry of judgment against FLORIDA YACHTS and NAVARRO for damages in an amount to be determined at trial, including attorneys' fees and costs, interest, and such other and further relief as the Court deems just and proper.

## COUNT VII
### FRAUD
### (AGAINST NAVARRO)

144.    AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

145.    This is an action for fraud against NAVARRO.

146.    NAVARRO intentionally brokered the resale of the Vessel between AZ INFINITY and INFINITY YACHT in violation of the Promissory Note and Mortgage held by AZI.

147.    To consummate the resale of the Vessel from AZ INFINITY to INFINITY YACHT, NAVARRO personally executed and notarized a false and fraudulent Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI without AZI's knowledge or consent. Exhibit 6 (Satisfaction of Mortgage); *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5,

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

lines 18-19 (Court: "[T]he evidence is pretty clear that the actual satisfaction document was improper by Mr. Navarro. I don't believe he was authorized to issue that by the Plaintiffs, and also, under Florida law, . . . I'm pretty sure, based on the statute, that he could not notarize that document for himself or on behalf of his company.")

148.    NAVARRO executed and notarized the false and fraudulent Satisfaction of Mortgage knowing that AZI's Promissory Note and Mortgage had not been satisfied.

149.    At all material times, including at the time NAVARRO brokered the resale of the Vessel, facilitated the closing on the resale of the Vessel, and personally executed the false and fraudulent Satisfaction of Mortgage, NAVARRO knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) he did not have authorization from AZI to sell the Vessel; and (6) he did not have authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

150.    AZI has been damaged by NAVARRO's acts, designed to dispose of AZI's security interest in the Vessel without AZI's knowledge or consent and to siphon off funds belonging to AZI.

WHEREFORE, AZI demands entry of judgment against NAVARRO for damages in an amount to be determined at trial, including attorneys' fees and costs, interest, and such other and further relief as the Court deems just and proper.

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421

## COUNT VIII
## VIOLATION OF FLA. STAT. § 817.515
## (AGAINST NAVARRO)

151. AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

152. NAVARRO intentionally brokered the resale of the Vessel between AZ INFINITY and INFINITY YACHT in violation of the Promissory Note and Mortgage held by AZI.

153. To consummate the resale of the Vessel from AZ INFINITY to INFINITY YACHT, NAVARRO personally executed and notarized a false and fraudulent Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI without AZI's knowledge or consent. Exhibit 6 (Satisfaction of Mortgage); *See* D.E. 44-1 (Preliminary Injunction Hearing Transcript) at page 5, lines 18-19 (Court: "[T]he evidence is pretty clear that the actual satisfaction document was improper by Mr. Navarro. I don't believe he was authorized to issue that by the Plaintiffs, and also, under Florida law, . . . I'm pretty sure, based on the statute, that he could not notarize that document for himself or on behalf of his company.")

154. NAVARRO executed and notarized the false and fraudulent Satisfaction of Mortgage knowing that AZI's Promissory Note and Mortgage had not been satisfied.

155. At all material times, including at the time NAVARRO brokered the resale of the Vessel, facilitated the closing on the resale of the Vessel, and personally executed the false and fraudulent Satisfaction of Mortgage, NAVARRO knew that: (1) AZI was unaware of the resale of the Vessel; (2) there was a Promissory Note and Mortgage held by AZI secured by the Vessel; (3) the terms of the Promissory Note and Mortgage prohibited AZ INFINITY from selling the Vessel without prior written consent from AZI; (4) the Promissory Note and Mortgage had not been satisfied; (5) he did not have authorization from AZI to sell the Vessel; and (6) he did not have

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

authorization from AZI to execute the Satisfaction of Mortgage discharging AZ INFINITY'S indebtedness to AZI.

156.    Pursuant to Fla. Stat. § 817.535(8)(a), "[a]ny person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action under this section without regard to whether criminal charges are pursued[.]"

157.    Pursuant to Fla. Stat. § 817.535(8)(b), "[u]pon a finding of intent to defraud or harass, the court or jury shall award actual damages and punitive damages . . . The court may also levy a civil penalty of $2,500 for each instrument determined to be in violation of [Fla. Stat. § 817.535(2)]."

158.    Pursuant to Fla. Stat. § 817.535(8)(c), "[t]he prevailing party in such a suit is entitled to recover costs and reasonable attorney fees."

159.    AZI has been damaged by NAVARRO's acts in executing and recording a false and fraudulent Satisfaction of Mortgage knowing that AZI's Promissory Note and Mortgage had not been satisfied, which was designed to dispose of AZI's security interest in the Vessel without AZI's knowledge or consent and to siphon off funds belonging to AZI.

WHEREFORE, AZI demands entry of judgment against NAVARRO for damages in an amount to be determined at trial, including attorneys' fees and costs, interest, and such other and further relief as the Court deems just and proper.

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421

## COUNT VIII
## UNJUST ENRICHMENT
## (AGAINST SALINAS)

160.     AZI re-alleges and incorporates paragraphs 1 through 87 above, as if fully set forth herein.

161.     After the resale of the Vessel from AZ INFINITY to INFINITY YACHT, which constituted a breach of the Promissory Note and a default under the Mortgage, FLORIDA YACHTS and NAVARRO disbursed $500,000 to SALINAS.

162.     To date, AZI has not received full payment pursuant to the Promissory Note or Mortgage.

163.     SALINAS has been unjustly enriched by his receipt and retention of $500,000 in proceeds derived from the sale of AZI's collateral, without satisfaction of Promissory Note or Mortgage.

164.     It would be unjust to allow SALINAS to enjoy economic benefit from the wrongfully obtained monies derived from the resale of the Vessel. SALINAS should not be permitted to retain the benefit of $500,000 at AZI's expense.

165.     AZI has been damaged by SALINAS' actions in retaining proceeds from the sale of AZI's collateral, without satisfaction of Promissory Note or Mortgage.

WHEREFORE, AZI demands entry of judgment against SALINAS for damages in an amount to be determined at trial, including attorneys' fees and costs, interest, and such other and further relief as the Court deems just and proper.

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

## PRAYER FOR RELIEF

WHEREFORE, for all the foregoing reasons, AZI demands judgment against the Defendants and seeks injunctive relief as more particularly stated within each Count above and hereby demands a trial by jury of all issues triable under the laws of the State of Florida.

## FLORIDA RULE OF CIVIL PROCEDURE 1.115(e) VERFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

_____
MAYRA RUIZ, on behalf AZI 116 LLC
Title:  Manager

Dated: _May 2, 2025_


Dated: _____

Respectfully submitted,

**BLACK SREBNICK, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
Phone: (305) 371-6421

By: /s/ _Howard Srebnick, Esq._____
     Howard Srebnick, Esq.
     Florida Bar No. 919063
     Raymie Walsh, Esq.
     Florida Bar No. 696821
     HSrebnick@RoyBlack.com
     RWalsh@RoyBlack.com
     civilpleadings@royblack.com

_Counsel for Plaintiff AZI 116, LLC_


33
**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | _p_ 305.371.6421